## THE JAMES A. WALSH.

### THE WALTER B. POLLOCK.

(District Court, S. D. New York. January 10, 1912.)

**1. Collision (§ 95\*)—Steam Vessels Crossing—Negligent Navigation.**

A steam lighter, crossing East river from Brooklyn in the daytime, *held* solely in fault for a collision with a barge in tow alongside a tug, also crossing, but on a different and crossing course, which made her the privileged vessel.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

**2. Collision (§ 6\*)—Steam Vessels Crossing—River and Harbor Rules.**

A pilot rule providing that, whenever danger signals are given, both vessels shall be stopped and backed, is invalid, as in violation of articles 19 and 21 of the inland navigation rules of June 7, 1897 (30 Stat. 101, c. 4 [U. S. Comp. St. 1901, p. 2883]), which require the privileged of two crossing steam vessels to keep her course and speed, and should not be followed, unless under special circumstances.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 6.*]

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Suit for collision by Nathaniel S. Knapp, owner of the canal boat Knapp, against the steam lighter James A. Walsh and the tug Walter B. Pollock. Decree for libelant against the Knapp alone.

On August 13, 1909, the tug Walter B. Pollock, with libelant's canal boat Knapp in tow alongside, on the port side, left Pier 16, Brooklyn, bound for Pier 5, East River, New York City. About the same time the steam lighter James A. Walsh left Pier 22, Brooklyn, further down the river, bound for the Maine Steamship Company's pier, No. 20, East River, New York. The two vessels came in collision about the middle of the river, the Walsh striking the port side of libelant's boat.

Robinson, Biddle & Benedict, for libelant.
Armstrong & Brown, for lighter Walsh.
Foley & Martin, for tug Pollock.

HOLT, District Judge (orally). [1] So far as the liability of the Walsh is concerned, this, in my opinion, is a clear case. The story given by her captain, as I understand him, seems to me almost incredible. He says that when he backed out from Pier 22 he saw the Pollock headed down the Brooklyn shore. Then he came on, and did not see her again until she loomed up right in front of him and he ran into her. The evidence is clear that the Pollock, with the barge in tow, backed out from Pier 16 in clear daylight, and the captain must have seen that she was backing and turning, and that there was only one moment in her turning when she was headed down the Brooklyn shore. If he had been paying attention, he would have seen that the Pollock kept coming around until she got on her course coming across the river to New York. He also says he gave the Pollock a two-whistle signal. Why did he do that, if, as he says, he first saw the Pollock going down the Brooklyn shore, and the next time he saw her she loomed up before him?

The fact is, when the two tugs got on their courses they were on crossing courses, and the Walsh was the burdened vessel, and bound to keep out of the way of the Pollock. If she did not see the Pollock until she ran into the barge, she was not keeping proper lookout. If the mast had anything to do with preventing the man at the wheel from seeing the Pollock, he should have had another man on lookout. But I think the mast would not prevent him from seeing the Pollock, if he was attending to his business. This is a case where the burdened vessel was bound to leave the road clear for the privileged vessel and keep out of the way. After the collision the Walsh went off and did not stand by, although asked to do so. In every point of view, it seems to me the Walsh is in fault.

[2] So far as the Pollock is concerned, the ground upon which I am asked to hold her in fault is that, after having given danger signals, she did not back. The pilot rule says:

"Whenever the danger signal is given, the engines of both steamers should be stopped and backed until the headway of the steamers has been fully checked."

But the statute does not say so. The statute (article 19, Inland Navigation Rules) says:

"When two steam vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other. Where, by any of these rules, one of the two vessels is to keep out of the way, the other shall keep her course and speed."

That is the general rule. But there is this prudential rule:

"In obeying and construing these rules, due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger."

The only circumstances under the statute which justify a violation of the rule that the privileged vessel shall keep her course and speed are when there are special circumstances which render departure from the rule necessary in order to avoid immediate danger. The pilot commissioners, in making this rule, probably had in view the case of two vessels meeting on crossing courses at an angle greater than a right angle. In that situation, if both back, they naturally get away from each other. But if they are on crossing courses, at an angle less than a right angle, by backing they may get into greater danger. I think this rule is invalid, and one which sometimes, if acted on, violates the statute.

Here we have a collision taking place in which the burdened vessel strikes the barge near her stern. Suppose, when the Pollock gave her danger signals, she had backed, she would have come into a position of greater danger, in my opinion. Therefore I do not think this rule has any application here. I think the pilot did just what he should have done. The special circumstances were not such as to justify anything different. I do not think the Pollock is guilty of fault in this case. Probably the captain has been in error in some of his evidence, and I think his report is probably correct. I think he gave one whistle, held his course, and that the other vessel, like many of the vessels around the harbor, wanted to go ahead, and make the privileged vessel yield her rights, and he jammed ahead, and ran into the other vessel.

I think the Walsh is wholly in fault, and I direct a judgment to that effect.